| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MANUEL GUSTAVO LARA, | ) | NO. CV 14-8920 (KS) |
| Plaintiff, | ) | |
| v. | ) | ORDER |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) | |
| Defendant | ) | |
| _____ | ) | |

## INTRODUCTION

Plaintiff Manuel Gustavo Lara ("Plaintiff"), filed a Complaint on November 21, 2014, seeking review of the denial of his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF No. 3.) On September 4, 2015, the parties filed a Joint Stipulation ("Joint Stip.") in which Plaintiff seeks an order reversing and vacating the Commissioner's decision, and either ordering the immediate payment of benefits or remanding the matter for further administrative proceedings. (ECF No. 22, Joint Stip. 19.) The Commissioner requests that the Court affirm the ALJ's decision or, should the Court reverse the decision, remand to the agency for further administrative action. (*Id.* 22.) On August 12 and 17, 2015, the

parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (ECF Nos. 18, 19.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On June 17, 2011, Plaintiff filed applications for DIB and SSI, alleging disability commencing June 22, 2008. (Administrative Record ("A.R.") 127-34 (SSI); 135-41 (DIB).) Plaintiff was 39 years old on the alleged onset date.[1] (*Id.* 35.) Plaintiff's prior relevant work experience was as a flower nursery laborer and welder. (*Id.* 57, 63.) The Commissioner denied Plaintiff's applications on October 5, 2011 (*id.* 71-79), and upon reconsideration on April 23, 2012 (*id.* 81-86). On June 11, 2012, Plaintiff requested a de novo hearing before an Administrative Law Judge ("ALJ"). (*Id.* 89-90.) On May 28, 2013, Plaintiff, who was represented by counsel, testified before ALJ Mary L. Everstine. (*Id.* 52-64.) Vocational Expert ("VE") David Van Winkle also testified at the hearing. (*Id.* 63.) On July 12, 2013, the ALJ issued an unfavorable decision, denying Plaintiff's claims for DIB and SSI. (*Id.* 28-37.) On September 23, 2014, the Appeals Council denied Plaintiff's request for review. (*Id.* 1-9.) Plaintiff then filed this timely civil action.

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five step evaluation process for determining whether a person is disabled as required under 20 CFR §§ 404.1520(a) and 416.920(a), at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 22, 2008, the alleged onset date. (A.R. 30.) At step two, the ALJ found that Plaintiff had

---

[1] Plaintiff's date of birth is August 18, 1968. (A.R. 127.)

the following severe impairments: multi-level disc protrusions (L2-L4) lumbar spine without stenosis, which more than a minimally affected Plaintiff's capacity to perform basic work functions. (*Id.*) The ALJ also determined that Plaintiff had medically determinable mental impairments of mood disorder and anxiety disorder, both attributed to "general medical condition." (*Id.*) After considering the four broad functional areas established in the disability regulations for evaluating mental disorders and section 12.00C of the Listing of Impairments,[2] the ALJ concluded that Plaintiff's mental impairments "do not cause more than minimal limitation in the [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." (*Id.*)

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (*Id.* 31.)

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "the full range of unskilled medium work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(c). (*Id.*) The ALJ found that Plaintiff was unable to perform any past relevant work as a flower nursery laborer or welder.

At step five, after considering Plaintiff's age, education[3], work experience, and RFC, the ALJ determined that "there are jobs that exist in significant numbers in the

---

[2] The four functional areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. In each of the first three functional areas, the ALJ found that Plaintiff had mild limitations. (*Id.* 31.) The ALJ determined the Plaintiff had not experienced any episodes of decompensation "of extended duration." (*Id.*)

[3] Plaintiff testified at the hearing that he came to the United States in 1988, but does not speak English and only finished the sixth grade. (A.R. 57.) Based on his inability to communicate in English, under agency regulations, the ALJ considered Plaintiff in the same way as an individual who is illiterate in English (citing 20 CFR 404.1564 and 416.964). (A.R. 36.)

3

national economy" that Plaintiff can perform and concluded that Plaintiff did not suffer from a disability from July 22, 2008 through the date of the ALJ's decision. (*Id.* 36.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676,

679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when the error "is inconsequential to the ultimate nondisability determination" or when, "despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, __ F.3d __, 2015 WL 6684997, at *4 (Aug. 4. 2015).

## DISCUSSION

The single disputed issue is whether the ALJ properly considered all of the medical opinions offered in the record in assessing Plaintiff's RFC. (Joint Stip. at 4.) Plaintiff contends that, the ALJ failed to properly consider the opinions of examining consultative psychologist Deborah DiGiaro regarding Plaintiff's mental limitations (*id*. at 4-9) and failed to give proper weight to the opinions of physician's assistant, Beth A. Brown regarding Plaintiff's physical limitations (*id*. at 10). The Court disagrees.

### Applicable Law

In Social Security cases, ALJs are required to give different degrees of deference to medical opinions depending on whether the opinion is that of a "treating physician," "examining physician," or "nonexamining physician." *Garrison v. Colvin*, 759 F.3d 995 1012 (9th Cir. 2014) (citation and quotation marks omitted). Generally, a treating physician's opinion is given "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the Plaintiff's] case

record[.]" *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citations and quotation marks omitted); see also 20 C.F.R. § 404.1527(c)(2). An examining, but non-treating, physician's opinion is entitled to less weight than that of a treating physician, but more weight than a nonexamining physician's opinion. *Id.* (citation omitted).

However, a treating physician's opinion is not necessarily conclusive as to a plaintiff's medical condition or disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). An ALJ may reject a treating physician's uncontroverted opinion by providing "clear and convincing reasons supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). An ALJ may reject a treating physician's opinion that conflicts with another doctor's opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison,* 759 F.3d at 1012 (citation and footnote omitted).

**The ALJ's RFC Assessment Is Supported By Substantial Evidence**

The ALJ, "after considering all of [Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," determined that Plaintiff had the RFC to perform "the full range of unskilled medium work as defined by 20 C.F.R. §§ 404.1567(c) and 416.976(c).[4] (A.R. at 31.) The basic mental demands for unskilled work include: (1) understanding, carrying out, and remembering simple instructions; (2) responding appropriately to supervision, co-workers and usual work situations; and (3) dealing with changes in a routine work setting. *See* 20 C.F.R. §§404.1521(b),

---

[4] In the regulations, medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work" 20 C.F.R. 404.1567 (C).

416.921(b). Plaintiff contends that, in making this assessment, the ALJ did not properly evaluate the medical evidence of Plaintiff's mental and physical limitations. For the reasons discussed below, the Court finds, contrary to Plaintiff's contentions, that the ALJ properly and adequately considered and evaluated Plaintiff's mental and physical impairments.

### A. The ALJ's Assessment of Plaintiff's Mental Impairments in Regards to the RFC Are Supported by Substantial Evidence

The ALJ determined that Plaintiff had medically determined mental impairments of mood disorder due to general medical condition; and anxiety disorder due to general medical condition. (A.R. 30.) At Step 2 of the five-step sequential evaluation process, the ALJ concluded that claimant's medically determinable mental impairments did not cause more than minimal limitations in Plaintiff's ability to perform basic mental work and, therefore, were nonsevere. (*Id.* at 31.) In reaching this conclusion, the ALJ considered the four broad functional area outlined in the disability regulations for evaluating mental disorders[5], otherwise referred to as the "paragraph B" criteria and made the following findings as to each area : (1) activities of daily living – mild limitation; (2) social functioning – mild limitation; (3) concentration, persistence or pace -  mild limitation; and (4) episodes of decompensation – Plaintiff had experienced no such episodes of extended duration. (*Id.*)

The ALJ acknowledged that the limitations in "paragraph B" criteria used at Step 2 are not a residual functional capacity assessment and noted that the RFC assessment "requires a more detailed assessment by itemizing various functions

---

[5] *See* 20 C.F.R., Part 404, Subpart P, Appendix 1.

7

contained in the broad categories in paragraph B of the adult mental disorders listings in 12.00 of the Listings of Impairments [ ]." (A.R. 31.) The ALJ explained that the RFC assessment reflected the degree of limitation found in the "paragraph B" mental function analysis. (*Id*.) To reach the determination that Plaintiff's mental limitations were non severe, the ALJ discussed in detail the "paragraph B" criteria in conjunction with findings of the consultative examiners and Plaintiff's treating sources.

### 1. Opinions As to Plaintiff's Mental Impairments

In September 2011, Dr. Ashamalla performed a psychological evaluation of Plaintiff at the agency's request. (A.R. 257-61.) Dr. Ashamalla reported that Plaintiff was fully oriented to time, place, person and purposes and of at least average intellect. Dr. Ashamalla diagnosed mood disorder secondary to general medical condition (chronic back pain), but determined that Plaintiff's overall prognosis from a psychiatric standpoint was "deemed good." (A.R. 261.) He also reported that Plaintiff could recall three items, immediately and three items after five minutes; Plaintiff could perform series threes with prompting and do simple calculations and could interpret a proverb. *(Id.* at 260.) Further, Dr. Ashamalla found Plaintiff's cognitive function to "be within normal limits to slight impairment as regards attention span, concentration." (*Id*. at 261.) His evaluation found no limitations in Plaintiff's mental capacity as to the following: understand, remember or carryout simple one or two step job instructions; to relate to co-workers and the public; to associate with day-to-day work activity; accept instructions from supervisors; or ability to perform work activities without special or additional supervision (*Id.*) Dr. Ashamalla found only mild restrictions in Plaintiff's ability to do detailed complex instructions; maintain concentration and attention, persistence and pace; and maintain

regular attendance in the work place. (*Id.*) Dr. Ashamalla assigned Plaintiff a current GAF[6] of 55. (*Id.*)

Also in September 2011, consultative examiner, Deborah Hartley, Ph.D., reported affective disorders and anxiety-related disorders. (A.R. 267.) She, too, reported only mild limitations in Plaintiff's activities of daily living, difficulty in maintaining social function and concentration, persistence or pace, and no episodes of decompensation. (*Id.* at 277.) Dr. Hartley stated that Plaintiff's memory was adequate; concentration and calculation intact; and insight and judgment were intact. (*Id.* at 279.) Specifically, she reported that Plaintiff's activities of daily living were "primarily limited by physical complaints." (*Id.*) During Dr. Hartley's examination, Plaintiff reported "no specific mental barriers to personal care, preparing meals, driving, shopping, managing money socializing or following instructions." (*Id.*)

In March 2012, examining psychologist, Dr. Deborah DiGiaro, Ph.D., also performed a comprehensive psychiatric evaluation. (A.R. 400-403.) Specifically, Dr. DiGiaro's functional assessment found that Plaintiff had the ability to manage his own funds; had no limitations in his ability to perform simple and repetitive tasks; accept instructions from supervisors; interact with coworkers and the public or to perform work activities on a consistent basis without special or additional instruction. (*Id.* at 403.) Dr. DiGiaro found Plaintiff "mildly impaired" in his ability to perform detailed and complex tasks; and "moderately impaired" in his ability to maintain regular attendance in the workplace, complete a normal workday or workweek without interruption from a psychiatric condition; and to deal with stress encountered in a competitive work environment. (*Id.*) Dr. DiGiaro noted that Plaintiff's "'progress is

---

[6] GAF refers to Global Assessment of Functioning – a numeric scale (0-100) used by mental health practitioners and physicians to rate the social, occupational and psychological function of adults. *See* Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed., 2000).

slightly improved with out-patient treatment" and determined Plaintiff's GAF as 60 and his prognosis as "fair." (*Id*.) Dr. DiGiaro also noted that Plaintiff's insight was "fair" and he was "compliant with treatment." (*Id.* at 402.)

In a medical evaluation by Dr. Ursula Taylor in March 2012, Dr. Taylor's mental status examination reported that Plaintiff "appeared to be in no acute distress." (A.R. 395.)

In April 2012, medical consultant Janice Smith, Ph.D. reported affective disorders and substance additional disorders. (*Id.* at 404.) Dr. Smith reported mild limitations in activities of daily living, in maintaining social functioning; in concentration, persistence or pace; and no episodes of decompensation. (*Id.* at 414.)

On May 23, 2013, Luis Gimenez, L.C.S.W., plaintiff's treating therapist, submitted a Psychiatric Review Technique in which he stated that he saw Plaintiff 34 times in psychotherapy between November 2011 and May 2013. (*Id.* at 482.) He also indicated that, with respect to Organic Mental Disorders, Plaintiff had memory impairment, change in personality; disturbance in mood, and impairment of impulse control. (*Id.* at 468.) The notes identify an additional medically determinable impairment of "Major Dep. Recurrent/moderate." (*Id.*) Under the "B Criteria" rating for functional limitations, Mr. Gimenez rated Plaintiff's restriction of activities of daily living as "'Extreme' because of pain"; difficulties in maintaining social functioning as "Extreme;" difficulties in maintaining concentration, persistence or pace as "Marked"; and indicated Plaintiff has suffered "four or more" episodes of decompensation, each of extended duration. (*Id.* at 480.) Mr. Gimenez also indicated Plaintiff had a "history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement." (*Id*. at 481.) Mr. Gimenez's final notes in the report state that he did

10

not believe that Plaintiff is able to work because his "back pain, shoulder pain and neck, plus his depression and anxiety get in the way." (*Id*. at 482.)

### 2. The ALJ Did Not Err in the RFC Assessment as to Plaintiff's Mental Impairments

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). A treating physician's report relative to a claimant's work-related ability is persuasive, but not dispositive, evidence of a claimant's disability due to pain. *Gallant v. Heckler* 753 F.2d 1450, 1454 (9th Cir. 2005). However, licensed clinical social workers are not "acceptable medical sources" as defined by agency regulations, and therefore their opinions are not entitled to the same deference as licensed physicians and other qualified specialists. *See* 20 C.F.R. §§ 404.1513, 416.913; S.S.R. 06-03p. The ALJ treats social worker opinions as opinions from "other sources," which may be discounted if the ALJ gives germane reasons for doing so. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

Plaintiff acknowledges that Dr. DiGiaro's assessment was largely consistent with Dr. Ashamalla's findings. (Joint Stip. at 6.) Plaintiff also acknowledges that Mr. Gimenez "identifies the similar limitations as Dr. DiGiaro." (Joint Stip. at 7.) But Plaintiff argues that "the ALJ erred in not considering the opinion of Dr. Ashamalla in support of its decision to support Dr. DiGiaro's opinion." (Joint Stip. at 7.) Further, Plaintiff asserts that the ALJ erred in not assigning weight to the opinions of Dr. DiGiaro and giving "great weight" to the opinions of nontreating, agency physicians Dr. Janice B. Smith, Ph.D. and Deborah Hartley, Ph.D. in assessing a non-severe mental impairment. (*Id.*) In response, the Commissioner concedes that the ALJ erred in not assigning weight to the opinion of the consultative examiners, Drs.

DiGiaro and Ashamalla, but argues that any error in this regard was harmless. (Joint Stip. at 14.)

As an initial matter, the failure to assign a weight to Dr. DiGiaro's opinions is harmless because even if the ALJ had assigned specific weight to the consultative examiners' opinions, Plaintiff concedes that the opinions are consistent with one another. In addition, no medical provider, whether examining or treating, found that Plaintiff had any severe mental impairment and despite the diagnosis of a mood disorder and anxiety disorder, Plaintiff had no history of any psychiatric hospitalization, suicide attempts, psychosis or posttraumatic stress disorder. (A.R. at 401.)

Moreover, the ALJ provided germane reasons for discounting the opinions of Plaintiff's treating therapist, Mr. Gimenez. The ALJ pointed to the fact that Mr. Gimenez's own progress notes reflected "consistent GAF scores ranging from 60-63 (indicating mild symptoms or functional imitation) until 2012, when it was lowest just before the hearing. (*Id.* at 35.) Further, although Mr. Gimenez indicated that Plaintiff experienced four or more episodes of decompensation, nothing in the medical records substantiates this and Mr. Gimenez himself provided no supporting treating notes or documentation evidencing such episodes.

The ALJ noted the contradiction between Mr. Gimenez's opinion that Plaintiff could not function "outside a highly supportive living arrangement" and reports by Plaintiff's wife in that claimant watched television, went for walks, mowed the lawn and watered the grass, and was able to take care of his own personal needs without any special reminders. (*Id.* at 34, 172.) The ALJ also pointed to the findings of medical consultant Deborah Hartley, Ph.D. that in August 2011, Plaintiff reported no specific mental barriers to personal care, preparing meals, driving, shopping managing

12

money, socializing or following instructions. (*Id.* at 33, 279.) Finally, based on all this evidence, it appears the RFC assessment for unskilled medium work incorporated the degree of limitation found in the "paragraph B" mental function analysis. (*Id*. at 31.) *See e.g., Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (finding ALJ properly made credibility determinations among varying opinions concerning claimant's mental limitations when incorporating those findings into an RFC for simple, unskilled work).

Here, because the ALJ provided germane reasons supported by substantial evidence in the record, the Court finds no legal error in the ALJ's determination that Plaintiff's mental limitations are non-severe for purposes of the RFC assessment. Further, any error by the ALJ in failing to assign weight to the consultative examiners' opinions is harmless, because it would not change the determination on the record as a whole that Plaintiff could perform medium unskilled work. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was 'inconsequential to the ultimate nondisability determination.'" (internal citations omitted).

Accordingly, the ALJ's RFC assessment as to Plaintiff's mental impairment level is supported by substantial evidence and does not warrant remand or reversal.

### B. The ALJ Did Not Materially Err in Assessing the Medical Opinions Regarding Plaintiff's Physical Limitations

The ALJ determined that Plaintiff had severe physical impairments associated with degenerative disc disease, including disc protrusions (L2-L4) and lumbar spine without stenosis. (A.R. 30.) A lumbar MRI in July 2011 indicated

"mild levoscoliosis at L2-3, 2mm disc protrusion at L1-2, 1mm disc bulge at L2-3, and 2mm disc bulge at L3-4. (*Id.* at 32, 255-56.) Plaintiff's medical records reveal a consistent history of chronic back pain. (*See e.g.,* A.R. 401 ("Significant for severe, chronic low back pain."); 462 ("lumbar rudiculopathy, spondylosis; [ . . .] pain is chronic"); 496 ("chronic low back pain").)

### 1. Opinions As to Plaintiff's Physical Limitations

In September 2011, Dr. Ursula Taylor performed an independent medical evaluation of Plaintiff. (A.R. at 262-66.) She reported that Plaintiff ambulated with a normal gait, had excellent muscle tone and muscle bulk on his back, straight-leg raising was negative bilaterally with decreased range of motion of the lumbar spine. (*Id.* at 265.) She also noted that Plaintiff "appeared to have an unusually muscular upper body, which is somewhat inconsistent with significant back pain, and there was significant muscle tone noted in the lower back, although some of this could possibly be due to back spasm." (*Id.*)

Just a month after Dr. Taylor's evaluation, in October 2011, agency medical consultant, Luther Woodcock, M.D., reported that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently stand or walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday. (A.R. at 282.) Dr. Woodcock opined that, based on the imaging documenting Plaintiff's degenerative disc disease and Plaintiff's limitations as to activities of daily living, a greater degree of physical limitation was warranted than Dr. Taylor proposed. (*Id.* 287.)

In March 2012, Dr. Taylor examined Plaintiff again and reported that Plaintiff had had three back surgeries in 2010 and at the time of her evaluation, Plaintiff had a wound from the removal of a large cyst on his back that was not yet

fully healed. (*Id*. at 394.) She also noted that Plaintiff's "muscle tone, bulk, and strength are normal." (A.R. 397.) Plaintiff's straight-leg raising appeared to be "borderline positive but he generally ambulates very well. It is difficult to appreciate any significant degree of limitation based on back pain, but some slight limitation could be considered." Dr. Taylor indicated that no medical records were submitted for review and she "strongly suggested that medical records are obtained and/or the [Plaintiff] is observed outside the clinical setting to see what his true physical capacity is." (*Id*. at 398.) Based on her examination she concluded that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently due to back pain; found no restrictions on standing, walking or sitting, and limited bending, stooping and pulling to a frequent basis due to back pain. (*Id*.)

On April 17, 2012, medical consultant, James Metcalf, M.D. completed a physical residual function capacity assessment. (A.R. at 418-25.) Dr. Metcalf reported that Plaintiff had normal gait, decreased range of motion in the lumbar and "[h]e ambulates well without an assistive device." (*Id.* at 425.) Dr. Metcalf also noted that "Poor effort cannot be ruled out of the exam" and concluded that Plaintiff "is capable of medium work activities. (*Id.)*

In May 2013, physician's assistant, Beth A. Brown, provided a Lumbar Spine Medical Source Statement. (A.R. 462-65.) Ms. Brown indicated she had treated Plaintiff for six months and listed Plaintiff's symptoms as chronic low back pain and insomnia. (*Id.* at 462.) She also characterized the pain as moderate to severe. (*Id.*) She noted that Plaintiff could stand/walk for less than 2 hours in an 8-hour working day (with normal breaks) and sit for about 4 hours. (*Id.* at 463.) When asked how frequently Plaintiff might need to take unscheduled breaks during a working day, her handwritten notes stated: "uncertain (daily)." (*Id*. at 464.) But she also noted that Plaintiff would not need the assistance of a cane or other assistive device when

15

standing/walking. (*Id.*) She found no restrictions in the use of Plaintiff's arms, that he could lift 10 pounds or less frequently, 20 pound occasionally, and 50 pounds never. (*Id.*) Ms. Brown noted that Plaintiff required a job that allows for the accommodation of sitting and standing and walking. (*Id.* at 464.) Finally, she indicated that Plaintiff was "capable of low stress work." (*Id.* at 465.)

### 2. The ALJ Provided Legally Sufficient Reasons Supported By The Record For Her Assessment Of The Medical Opinions Concerning Plaintiff's Physical Limitations

Plaintiff argues that in assessing Plaintiff's RFC, the ALJ improperly discounted the opinion of physician's assistant Beth A. Brown as a treating healthcare practitioner. (Joint Stip. at 10.) The Court disagrees. As an initial matter, the Ninth Circuit has recognized that physician's assistants, like social workers, are not considered "acceptable medical sources" under 20 C.F.R. §§ 404.1513(a), 416.913(d). Therefore, their opinions are not entitled to the same deference as licensed physicians and other qualified specialists, and "[t]he ALJ may discount testimony from these "other sources" if the ALJ gives germane reasons for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). However, a physician's assistant may qualify as an acceptable treating source, however, if she worked under a physician's close supervision such that she acted as the physician's agent. *See Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996) (referencing a regulation since repealed addressing a report of an interdisciplinary treating team).

Here, there is no evidence that physician's assistant Brown worked under a physician's supervision. Plaintiff argues that because California requires supervision of physician's assistants, "the physician's assistant's expressions are imputed to the

16

physician absent repudiation by the licensed physician." (Joint Stip. at 11.) Plaintiff's arguments are unavailing in the absence of any evidence in the record that Ms. Brown's work was supervised or even reviewed by a licensed physician. Her report does not reference any supervising physician and is not signed by any physician. (A.R. 465.) Accordingly, the ALJ did not err in failing to give the physician's assistant's opinions the same deference as that accorded to a treating licensed physician.

Even if Brown's opinions were accorded the same deference as that of a licensed physician, the ALJ did not err. When, as here, a treating or examining physician's opinion is contradicted, the ALJ can reject that opinion for specific and legitimate reasons that are supported by substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). In this case, the ALJ met this standard, providing specific, legitimate reasons, supported by substantial evidence in the record, for discounting Brown's opinion.

First, the ALJ found that Brown's assessment was not supported by examination signs or findings. (A.R. 35.) Brown's lumbar spine assessment consisted largely of a standardized form with little explanation for her findings. (A.R. 462-65.) Brown did not include any medical records, progress notes or supporting documentation in support of her findings. (*Id.*) The ALJ did not err in discounting the physician assistant's conclusory findings. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ permissibly rejected "check-off reports that did not contain any explanation of the bases of their conclusions").

The ALJ also outlined how Brown's findings were contradicted by other evidence in the record. For example, consultative examining physician Dr. Ursula Taylor, opined that Plaintiff could lift and carry 50 lbs. occasionally and 25 lbs.

17

frequently (A.R. 397) and consultant Dr. Woodcock opined that Plaintiff could lift/carry 25 pounds frequently and 50 pounds occasionally, as well as stand/walk and sit for about 6 hours in an 8-hour workday. (*Id.* at 32, 282.) The ALJ also pointed to the findings of Dr. Metcalf who, even though he believed greater limitations were warranted than Dr. Taylor indicated, still determined that Plaintiff could lift/carry 25 pounds frequently, 50 pounds occasionally, and stand/walk and sit for about 6 hours in an 8-hour workday. (*Id.* at 33, 419.) Indeed, in support of her RFC analysis, the ALJ gave a detailed summary of each medical opinion relating to Plaintiff's physical limitations. (*Id.* at 31-35.)

Based on this overall consideration of the record, the ALJ determined that the medical records "showed that treating sources responded with limited and conservative treatment, which was inconsistent with the medical response that would be expected if the symptoms and limitations were as severe as reported by the [Plaintiff] and the physician's assistant." (A.R. at 35.) The Ninth Circuit has held that "where evidence is susceptible to more than one rational determination," the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F. 3d 676, 679 (9th Cir. 2005).

Accordingly, this Court's review of the record indicates that the ALJ properly considered and evaluated Plaintiff's physical impairments in determining Plaintiff's RFC and a remand or reversal is not warranted on this basis.

## CONCLUSION

For all the reasons stated above, IT IS ORDERED THAT the decision of the Commissioner of Social Security is AFFIRMED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: December 7, 2015

                                     /s/ Karen L. Stevenson
                                      KAREN L. STEVENSON
                          UNITED STATES MAGISTRATE JUDGE